O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL Y. BIRMAN, | ) NO. CV 12-3838-SVW (MAN) |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER:  DISMISSING PETITION |
| | ) WITH PREJUDICE; AND DENYING |
| THE PEOPLE OF THE STATE | ) CERTIFICATE OF APPEALABIILTY |
| OF CALIFORNIA, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

Petitioner filed a habeas petition, pursuant to 28 U.S.C. § 2254, on May 3, 2012 ("Petition").  Petitioner seeks to challenge a 1993 murder conviction he sustained in the Los Angeles Superior Court, which resulted in a sentence of life without parole (the "1993 Conviction").[1] Petitioner alleges that he appealed the 1993 Conviction, and the California Supreme Court denied review on February 2, 1995.  (Petition at 2-3.)  Petitioner further alleges that he did not again challenge the

_____

[1]    Although Petitioner challenges a state court conviction, and thus properly filed the instant Petition pursuant to 28 U.S.C. § 2254, he presently is a federal prisoner incarcerated at USP-Florence in Colorado.)  According to an attachment to the Petition, he was convicted in state court for solicitation of a murder in 1987, while he was incarcerated.

1993 Conviction in the state court for over 16 years, namely, until
September 19, 2011, when he filed a habeas petition in the California
Supreme Court (Case No. S196631), in which he raised the claims now
alleged as Grounds One through Three in the instant Petition. (*Id.* at
3-5.) Petitioner admits that he has not raised Ground Four in any state
court proceeding. (*Id.* at 6.)

**PETITIONER'S CLAIMS**

Grounds One through Three of the Petition are based on the same
document, which Petitioner characterizes as "new evidence."
Specifically, Petitioner alleges that, in late 2002, he "discovered" a
July 9, 1992 letter written by the prosecutor at his trial to a member
of the Interstate Parole Unit, which related to a prosecution witness at
Petitioner's trial (the "1992 Letter"). Petitioner became aware of the
1992 Letter, because it was faxed from the California Department of
Corrections to his attorney on November 25, 2002. (Petition, attached
Memorandum ("Pet. Mem.") at 1 and Ex. 1; *see also* Petition at 6 ("new
evidence discover[ed] 7 years after appeal [which ended in 1995]."))

By Grounds One and Two, Petitioner asserts that the 1992 Letter
proves that the prosecutor and the subject witness lied at trial
regarding the extent of prosecutorial promises made to the witness.
(Petition at 5; Pet. Mem. at 1-2.) Ground Three simply states: "New
evidence (attd letter)." (Petition at 5.) Ground Three, thus, does not
plead a separate, cognizable claim on its own and simply indicates the
factual basis on which Grounds One and Two rest.

2

1    Ground Four of the Petition alleges that Petitioner was abandoned
2  by his attorney in post-conviction proceedings and references a state
3  court civil lawsuit Petitioner brought against that attorney (discussed
4  *infra*).  (Petition at 6.)  Petitioner alleges that he hired Attorney
5  Dana M. Cole ("Cole"), in February 1997, to pursue federal post-
6  conviction relief "all the way to the U.S. Supreme Court," but Cole
7  failed to do so and concealed from Petitioner the fact that he had not
8  done so.  (Pet. Mem. at 1.)

9

10                **THE OSC AND PETITIONER'S RESPONSE**

11

12    On June 8, 2012, United States Magistrate Judge Margaret A. Nagle
13  issued an Order To Show Cause Re: Dismissal For Untimeliness ("OSC").
14  The OSC advised Petitioner that the Petition fails to name an
15  appropriate respondent, in violation of Rule 2 of the Rules Governing
16  Section 2254 Cases in the United States District Courts.  The OSC also
17  advised Petitioner that the Petition is "mixed," and thus subject to
18  dismissal, because Petitioner admits that he has not exhausted Ground
19  Four.  (Petition at 6.)[2]

20

21    Magistrate Judge Nagle observed that the above defects could be
22  corrected but concluded nonetheless that leave to pursue such corrective
23  steps is not warranted, because the Petition, on its face, is

24

25    [2]    The OSC advised Petitioner that a "mixed" Section 2254
26  petition must be dismissed unless the petitioner elects to dismiss his
     unexhausted claim or seeks and obtains a stay while he pursues
27  exhaustion in the state court.  *See, e.g.,* Rhines v. Weber, 544 U.S.
     269, 275-77, 125 S. Ct. 1528, 1534-35 (2005); Rose v. Lundy, 455 U.S.
28  509, 510, 102 S. Ct. 1198, 1199 (1982); and King v. Ryan, 564 F.3d 1133,
     1143 (9th Cir. 2009).

                                    3

substantially untimely.[3]  The OSC explained, in detail, why the Petition is untimely, and it directed Petitioner to file a response to the OSC by no later than July 2, 2012, stating whether he concedes or disputes that this action is untimely.  The OSC expressly cautioned Petitioner that, if he "disputes that this action is untimely, he must explain clearly and in detail why it is not, and provide any available competent evidence that establishes the timeliness of this action."  (OSC at 10.)

Petitioner thereafter requested, and was granted, an extension of time to respond to the OSC.  On August 3, 2012, Petitioner filed his Response to the OSC ("Response").  The Response purports to be made under penalty of perjury but does not contain any documentary support.  Petitioner asserts that this action should be found timely, and he appears to rely on the following assertions:

1.   Petitioner is an Israeli citizen who speaks very little English and has very little understanding of the English language.  (Response at 1.)

2.   Petitioner suffers from brain damage, because he was shot in the

_____

[3]   Besides being unexhausted, Ground Four is not cognizable.  A state prisoner does not have a Sixth Amendment right to the effective assistance of counsel in post-conviction proceedings.  See 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); see also Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005)("because there is no Sixth Amendment right to counsel in state post-conviction proceedings, there can be no independent constitutional violation as a result of post-conviction counsel's incompetence"); Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998)("[b]ecause there is no constitutional right to an attorney in a state or federal habeas proceeding . . ., it follows that there can be no deprivation of effective assistance in such proceedings"; citations omitted).

head.  (Response at 1.)

3.   Petitioner has schizophrenia "and other psychosis." He has suffered from this since early in life, although he was just recently diagnosed.  Petitioner's schizophrenia inhibits and reduces his ability to carry out tasks and causes abnormal thoughts, feelings, and behavior.  (Response at 2.)

4.   Petitioner has been abandoned by the attorney who represented him in post-conviction proceedings.  (Response at 2; Petition, Ground Four.)

5.   Petitioner has not been treated well in prison.  (Response at 2.)

6.   Petitioner relies on other inmates to assist him with his legal challenges.  He copies the documents they prepare for him. (Response at 2-3.)

In addition, Petitioner cross-references a motion he filed in this action on July 24, 2012,[4] and he asserts that the evidence appended to that motion proves this action cannot be dismissed for untimeliness, because he lacks mental competence.  (Response at 2.)  The July 24 Motion appended four exhibits.  Exhibit 1 consists of a two-page medical report for a CT scan of Petitioner conducted on November 4, 2011; the

_____

[4]   On July 5, 2012, Magistrate Judge Nagle denied Petitioner's motion for the appointment of counsel.  On July 24, 2012, Petitioner filed a motion seeking reconsideration of the July 5 Order (the "July 24 Motion").  On July 30, 2012, Magistrate Judge Nagle denied the July 24 Motion.

5

report states that it was performed due to "visual problems/non recent injury" and that "[n]o acute intracranial abnormality" and "[m]ild chronic intracranial changes" were found.  Exhibit 2 is a declaration written in Petitioner's handwriting and purportedly signed by another inmate (Mikeal Glenn Stine).  Exhibit 3 is a printout from a website (ukhumanrightsblog.com) of a July 9, 2010 article relating to a delay in extraditing Abu Hamza and others after they voiced concerns about a host of things, including the treatment they would receive in a "supermax" prison in the United States such as USP-Florence.  Exhibit 4 is a June 12, 2012 letter from an attorney to inmate Stine.

### THE PETITION IS UNTIMELY

For the reasons set forth below, it is plain that this action is untimely and, further, that tolling principles cannot alter that conclusion.

I.   The Commencement Of Petitioner's Limitations Period

State prisoners seeking habeas relief under 28 U.S.C. § 2254 are subject to a one-year time limit on the filing of habeas petitions.  The "statutory purpose" of the one-year limitations period is to "encourag[e] prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." Carey v. Saffold, 536 U.S. 214, 226, 122 S. Ct. 2134, 2141 (2002); see also Welch v. Newland, 350 F.3d 1079, 1083 (9th Cir. 2003)(en banc).  The one-year

1   limitations period is set forth in 28 U.S.C. § 2244(d)(1).[5]

2

3   As Petitioner correctly alleges, the California Supreme Court

4   denied his petition for review on February 2, 1995.[6]   For those

5   prisoners, such as Petitioner, whose state convictions became final

6   prior to the effective date of the AEDPA, the Section 2244(d)

7   limitations period began to run no earlier than April 25, 1996. Malcolm

8   v. Payne, 281 F.3d 951, 955 (9th Cir. 2002).   Therefore, although

9   Petitioner's conviction became final prior to April 1996, he had until

10   April 24, 1997, in which to file a timely federal habeas petition

11   challenging his 1993 conviction. Patterson v. Stewart, 251 F.3d 1243,

12   1246 (9th Cir. 2001).

13

14   Petitioner did not seek federal habeas relief until April 26, 2012,

15   the date on which he mailed the instant Petition to this Court.[7]  (See

16   Docket No. 1 at 19, copy of Priority Mail envelope in which Petitioner

17   mailed the Petition.)   The Petition, therefore, is untimely by over 15

18

19   ────────────────

20   [5]   The Section 2244(d)(1) limitations period is triggered and
     begins to run from the latest of:  (A) the date on which the underlying

21   judgment became final through either the conclusion of direct review or
     the expiration of the time for seeking such review; (B) the date on

22   which any impediment to the filing of a federal petition created by
     unconstitutional state action is removed; (C) the date on which a newly

23   recognized and retroactively applicable constitutional right was first
     recognized by the United States Supreme Court; or (D) the date on which

24   the factual predicate underlying a claim could have been discovered
     through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

25   [6]   Pursuant to Rule 201 of the Federal Rules of Evidence, the
     Court takes judicial notice of the official dockets for the California

26   Supreme Court and the California Courts of Appeal available through the
     California Courts website (see http://appellatecases.courtinfo.ca.gov).

27   [7]   See Rule 3(d) of the Rules Governing Section 2254 Cases in the

28   United States District Courts, setting forth the "mailbox rule" for
     prisoner filings.

1    years, absent tolling.

2

3        In the OSC, Magistrate Judge Nagle observed that, given

4    Petitioner's allegations that he did not "discover" the 1992 Letter

5    until late 2002, he might argue that he is entitled to a delayed

6    commencement of his one-year limitations period, pursuant to subpart (D)

7    of Section 2244(d)(1) (providing for a delayed accrual date based on the

8    date on which the factual predicate underlying a claim could have been

9    discovered through the exercise of due diligence).  In his Response,

10   however, Petitioner did not address this issue, much less make such an

11   argument.  The Court need not determine whether a delayed commencement

12   of Petitioner's limitations period -- *i.e.,* to late 2002 -- is warranted

13   factually and legally, because even if Petitioner were afforded such a

14   substantially delayed commencement of the one-year limitations period,

15   the Petition necessarily would remain untimely, for the reasons set

16   forth below.

17

18   II.  <u>Statutory Tolling Cannot Render The Petition Timely</u>.

19

20       The Section 2244(d) limitations period is subject to a statutory

21   tolling provision, which suspends it for the time during which a

22   "properly-filed" application for postconviction or other collateral

23   review is "pending" in state court.  28 U.S.C. § 2244(d)(2); <u>Patterson</u>,

24   251 F.3d at 1247.  Even if, *arguendo*, Petitioner's limitations period

25   for Grounds One through Three could be deemed to have commenced no

26   earlier than November or December 2002, when Petitioner allegedly

27   discovered the 1992 Letter, his limitations period necessarily expired

28   one year later in November or December 2003.  Petitioner did not file a

state habeas petition raising Grounds One through Three until September 2011, when he initiated Case No. S196631 in the California Supreme Court.  That state court filing occurred over eight years too late to serve as a basis for statutory tolling pursuant to 28 U.S.C. § 2244(d)(2).[8]  *See, e.g.*, <u>Laws v. Lamarque</u>, 351 F.3d 919, 922 (9th Cir. 2003)("because [petitioner] did not file his first state petition until after his eligibility for federal habeas had already elapsed, statutory tolling cannot save his claim in the first instance"); <u>Ferguson v. Palmateer</u>, 321 F.3d 820, 823 (9th Cir. 2003)("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

Moreover, the California Supreme Court denied the habeas petition filed in Case No. S196631 with a citation to <u>In re Robbins</u>, 18 Cal. 4th 770, 780 (1998), which constituted a denial of the petition on the ground of untimeliness.[9]  As a result, on this basis alone, Section 2244(d)(2) tolling is precluded for the time this state high court petition was pending.  *See* <u>Allen v. Seibert</u>, 552 U.S. 3, 6, 128 S. Ct. 2, 4 (2007)(*per curiam*)("a state postconviction petition is . . . not 'properly filed' if it was rejected by the state court as untimely"); <u>Lakey v. Hickman</u>, 633 F.3d 782, 785-86 (9th Cir. 2011)("we have consistently held that statutory tolling 'is unavailable where a state

---

[8]   Petitioner has not filed any other state post-conviction filing related to his 1993 conviction.

[9]   *See* <u>Thorson v. Ramirez Palmer</u>, 479 F.3d 643, 645 (9th Cir. 2007)(holding that a <u>Robbins</u> citation at the pinpoint citation noted above constitutes a "clear ruling" by the state court that the petition is untimely); *see also* <u>Walker v. Martin</u>, ___ U.S. ___, 131 S. Ct. 1120, 1126 (2011)("A summary denial citing . . . *Robbins* means that the petition is rejected as untimely.").

habeas petition is deemed untimely under California's timeliness standards'")(citation omitted), *cert. denied* 131 S. Ct. 3039 (2011); Thorson, 479 F.3d at 645 (if the California Supreme Court denies a habeas petition as untimely, application of Section 2244(d)(2) is precluded).

In short, whether Petitioner's limitations period is deemed to have commenced running in April 1996, pursuant to Section 2244(d)(1)(A), or its commencement is deemed to have been delayed until late 2002, pursuant to Section 2244(d)(1)(D), Petitioner may not receive any statutory tolling pursuant to Section 2244(d)(2).

III. <u>The Equitable Tolling Doctrine Does Not Render The Petition Timely</u>.

The gist of the Response is that the Petition should be deemed timely due to Petitioner's asserted schizophrenia. Petitioner asserts that, "at all relevant times," he has been unable to understand court procedures, deadlines, and orders as a result of his alleged schizophrenia. (Response at 4.) Thus, it appears that Petitioner contends he is entitled to equitable tolling based on his claimed mental illness.

The Section 2244(d) one-year limitations period may be equitably tolled in appropriate circumstances. <u>Holland v. Florida</u>, ___ U.S. ___, 130 S. Ct. 2549, 2560-62 (2010). However, application of the equitable tolling doctrine is the exception rather than the norm. *See, e.g.,* <u>Waldron-Ramsey v. Pacholke</u>, 556 F.3d 1008, 1011 (9th Cir.

2009)(characterizing the Ninth Circuit's "application of the doctrine" as "sparing" and a "rarity"); _Miles v. Prunty_, 187 F.3d 1104, 1107 (9th Cir. 1999)("equitable tolling is unavailable in most cases").  "Indeed, the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  _Miranda v. Castro_, 292 F.3d 1063, 1066 (9th Cir. 2002)(internal quotation marks and citation omitted); _see also_ _Lakey_, 633 F.3d at 786 (noting the "necessity" of a "high threshold" for application of the equitable tolling doctrine).

As the Supreme Court has explained, a habeas petitioner may receive equitable tolling only if he "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing."  _Holland_, 130 S. Ct. at 2562 (citation omitted); _see also_ _Pace v. DiGuglielmo_, 544 U.S. 408, 418 and n.8, 125 S. Ct. 1807, 1814 and n.8 (2005).  A petitioner seeking application of the doctrine bears the burden of showing that it should apply to him.  _Id._ at 418, 125 S. Ct. at 1814-15; _see also_ _Lawrence v. Florida_, 549 U.S. 327, 336, 127 S. Ct. 1079, 1085 (2007)(observing that, to receive equitable tolling, the petitioner must prove the above two requirements).

The petitioner must establish not only the existence of an extraordinary circumstance but also that the extraordinary circumstance was, in fact, the cause of the untimely filing of the federal habeas petition.  _See_ _Spitsyn v. Moore_, 345 F.3d 796, 799 (9th Cir. 2003); _see also_ _Bryant v. Arizona Att. Gen._, 499 F.3d 1056, 1061 (9th Cir. 2007)(a petitioner must show that the claimed extraordinary circumstances were the cause of his untimeliness); _Roy v. Lampert_, 465 F.3d 964, 969 (9th

11

Cir. 2006)(the extraordinary circumstances claimed must be the cause of the petition's untimeliness).

In addition, the "petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence," Bryant, 499 F.3d at 1061, and that he pursued his rights diligently throughout the relevant period, Roy, 465 F.3d at 972. A failure to act diligently throughout the time at issue will break the link of causation between the extraordinary circumstance and the failure to timely pursue relief. *See, e.g.,* Spitsyn, 345 F.3d at 802 (equitable tolling is not available unless the petitioner exercised reasonable diligence "in pursuing the matter, under the circumstances he faced"); Guillory v. Roe, 329 F.3d 1015, 1016, 1018 (9th Cir. 2003)(declining to afford equitable tolling, despite a circumstance that otherwise would warrant it, when the petitioner failed to act diligently in exhausting his claims); Miles, 187 F.3d at 1107 (equitable tolling is not appropriate when a petitioner's own conduct, rather than "external forces," accounts for the failure to file a timely habeas claim).

The Ninth Circuit has observed that, if a prisoner's mental illness "in fact caused him to fail to meet the AEDPA filing deadline," this may constitute an extraordinary circumstance sufficient to satisfy the first requirement for equitable tolling. Laws, 351 F.3d at 923; *see also* Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010). However, the mere existence of a mental illness is insufficient to warrant equitable tolling; rather, the petitioner must establish a causal connection between his mental illness and his failure to seek habeas relief on a timely basis. Laws, 351 F.3d at 923; see also Lawrence v. Florida, 421

12

F.3d 1221, 1226-27 (11th Cir. 2005)(a petitioner seeking equitable tolling based on mental illness must "establish a causal connection between his alleged mental incapacity and his ability to file a timely petition," and a mere contention that he has suffered from a mental impairment his entire life "is insufficient to justify equitable tolling"), *aff'd by* <u>Lawrence</u>, *supra*; <u>Nara v. Frank</u>, 264 F.3d 310, 320 (3d Cir. 2001)("mental incompetence is not a *per se* reason to toll a statute of limitations"; a petitioner also must show that the mental incompetence actually affected his ability to file a timely federal habeas petition); <u>Rhodes v. Senkowski</u>, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000)(to justify equitable tolling, a "petitioner must allege more than the mere existence of physical or mental ailments"; a petitioner has the burden of showing that he was thereby "rendered . . . unable to pursue his legal rights during the one-year time period").

The Supreme Court has not examined or delineated the circumstances under which mental illness will warrant equitable tolling. *See* <u>Lawrence</u>, 549 U.S. at 337, 127 S. Ct. at 1086 (in response to petitioner's claim that he was entitled to equitable tolling based on mental incapacity, the Supreme Court observed that, "[e]ven assuming this argument could be legally credited, Lawrence has made no factual showing of mental incapacity."). However, in <u>Bills</u>, the Ninth Circuit established a test for determining a petitioner's eligibility for equitable tolling based on a claim of mental impairment.

Assuming that the petitioner has "satisfied his burden" of establishing the existence of a severe mental impairment during the limitations period (<u>Bills</u>, 628 F.3d at 1100), the petitioner then must

13

satisfy the following two requirements.  First, the petitioner must show his mental impairment was an extraordinary circumstance beyond his control that made it impossible for him to timely seek relief.  He may demonstrate this by showing that his mental impairment prevented him from understanding the need to timely file, effectuating filing on his own, or finding and using assistance from others.  *Id.* at 1109-1100. Second, the petitioner must show that he exercised diligence in pursuing his claims to the extent he could understand them, but that his mental impairment nonetheless made it impossible to meet the filing deadline under the totality of the circumstances.  *Id.* at 1100.  A federal habeas court must "consider whether the circumstances demonstrated the petitioner was otherwise diligent in attempting to comply with the filing requirements," which means that "the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available."  *Id.* at 1101.

Petitioner's equitable tolling argument fails at the threshold level, because there is no competent evidence of mental illness before the Court.  In the OSC, Magistrate Judge Nagle cautioned Petitioner that he must discuss in detail the reasons why this action should be deemed timely, as well as provide available documentary evidence.  Petitioner has not done so.  Rather, he simply asserts, conclusorily, that he has "brain damage" from being shot in the head and suffers from schizophrenia "and other psychosis."  Petitioner's assertion -- that he has suffered from schizophrenia since he was a child -- is questionable, given that he claims to suffer from a lifelong condition yet only to have been diagnosed with it recently, and moreover, he has not provided

1    any evidence of this alleged recent diagnosis.[10]   In any event,

2    Petitioner has not adduced *any* evidence of a mental health issue, such

3    as medical records documenting the alleged schizophrenia diagnosis

4    and/or the "brain damage," treating records, test results, etc.

5    Contrary to Petitioner's assertion, the MRI report appended to the July

6    24 Motion does not establish that Petitioner suffers from any mental

7    illness or other health impairment.   Petitioner's production of this

8    medial record demonstrates that he has the ability to obtain and produce

9    his medical records; the fact that he has not produced any medical

10   record that supports his conclusory mental impairment allegation calls

11   it into question.

12

13       Even if, however, Petitioner could adduce evidence of mental

14   impairment for some reason (whether due to a schizophrenia diagnosis or

15   otherwise), he nonetheless cannot establish an entitlement to equitable

16   tolling on this basis.   Indeed, it is plain that any such impairment did

17   not cause him to fail to apprehend the need to timely seek relief and/or

18   to effectuate filings in support of relief.

19

20       On January 29, 2010, Petitioner, on a *pro se* basis, filed a civil

21   action against his post-conviction counsel (Cole) in the Los Angeles

22   Superior Court (Case No. BC430970), alleging claims for breach of

23   contract, fraud, and legal malpractice.   Those three claims were based

24

25       [10]   Petitioner's reliance on the exhibits to the July 24 Motion,
26   including inmate Stine's declaration, is misplaced.  As Magistrate Judge
     Nagle advised Petitioner in her Order denying the July 24 Motion, the
27   declaration of another inmate opining as to Petitioner's asserted mental
     health diagnosis is not competent to establish the existence of such an
28   illness.  None of the exhibits to the July 24 Motion reflects any mental
     illness diagnosis; indeed, they are irrelevant to the issue.

on the facts that also support Ground Four, *to wit*, that Petitioner retained Cole in 1997, for the purpose of seeking federal habeas relief, but Cole failed to pursue such relief. <u>Birman v. Cole</u>, 2011 WL 3276737, at *1 (Cal. App. 2 Dist. Aug. 2, 2011) (hereafter, "<u>Birman v. Cole</u>"). In a declaration filed in the state trial court on June 21, 2010, Petitioner stated that he fired Cole in 2006, "'at which time, [Petitioner] fully realized, that fraud, legal malpractice and breach of contract occurred.'" *Id.* Petitioner attached to his declaration a copy of a letter he sent to Cole, dated April 20, 2006, in which Petitioner set forth a "list of grievances," including that, as of the letter's date, Cole had not pursued federal post-conviction relief. *Id.* The trial court sustained Cole's demurrer based on its finding that the action was barred by the applicable statutes of limitation, and Petitioner appealed. *Id.* at *1-*2.

The California Court of Appeal found that Petitioner's April 20, 2006 letter to Cole proved that, as of the letter's date, Petitioner was aware of Cole's allegedly wrongful conduct. <u>Birman v. Cole</u>, 2011 WL 3276737, at *2-*3. Thus, Petitioner's claims against Cole accrued as of April 20, 2006, if not earlier, and because Petitioner's civil action was not filed until over three years later, it was untimely and properly dismissed on that ground. *Id.*

The record, therefore, shows that as of February 1997 -- while Petitioner's limitations period was still running -- Petitioner plainly apprehended the need to pursue federal habeas relief; indeed, he hired Cole to do so. Further, by April 2006, if not before then, Petitioner was fully aware that Cole had not sought federal habeas relief based on

16

the substance of Grounds One through Three, *i.e.*, Cole had failed to assert habeas claims premised on the 1992 Letter that Petitioner discovered in late 2002. Petitioner also was fully aware of the substance of Ground Four, *viz.*, Cole's asserted abandonment and concealment of his failure, since 1997, to seek federal habeas relief. Petitioner, however, did not promptly seek to exhaust his known claims by raising them in the state courts, so that he could then seek federal habeas relief. Rather, on July 17, 2009, Petitioner, on a *pro se* basis, filed an accusation against Cole in the California Supreme Court (Case No. S174713). On August 19, 2009, the California Supreme Court denied the accusation petition. As noted above, on January 29, 2010, Petitioner commenced the Birman v. Cole civil action, again pursuing relief against Cole on a *pro se* basis. Petitioner also proceeded *pro se* in his appeal of the demurrer granted to Cole in that action. Birman v. Cole, 2011 WL 3276737, at *1.

The record thus demonstrates that, although Petitioner now claims to have suffered from mental illness since he was a child, he was aware of the need to pursue federal habeas relief as of February 1997, and hired Cole to pursue such relief, at a time when Petitioner's limitations period had not yet run. Accordingly, the first prong of the Bills test cannot be satisfied, and equitable tolling is unavailable.

As noted earlier, in his Response, Petitioner complains that he was abandoned by Cole. Petitioner does not assert that he is entitled to equitable tolling on the ground that, for approximately nine years, Cole allegedly concealed from Petitioner Cole's failure to timely seek federal habeas relief. Had any such contention been made and adequately

17

supported, however, it could not render the Petition timely.  Petitioner admits that, in late 2002, he discovered the 1992 Letter, which had been faxed to Cole.  Petitioner has also admitted under oath that he learned of Cole's asserted malfeasance in or before April 2006, by which time Petitioner was able to formulate a list of grievances regarding Cole's failure to pursue habeas relief.  Even if Petitioner could adduce evidence that he suffered from mental illness for some period after February 1997, he could not claim an entitlement to equitable tolling past April 2006, because as of that date, Petitioner was aware of the basis for all four claims alleged in the instant Petition and had formulated his complaints about Cole's failure to seek federal habeas relief.  Moreover, on January 29, 2010, Petitioner brought the Birman v. Cole action in the state trial court on a *pro se* basis.

In short, even if further proceedings could adduce evidence of a mental impairment or any other matter affecting Petitioner's ability to pursue relief that arguably could rise to the level of an extraordinary circumstance, it nonetheless would not be possible to equitably toll Petitioner's limitations period from its presumptive expiration date of April 1997, to any date later than January 29, 2010.  By February 2007, Petitioner plainly appreciated the need to pursue federal habeas relief, and by no later than January 29, 2010, if not much earlier, he *was* able to litigate on a *pro se* basis, even if he did so with the assistance of other inmates, as he alleges.[11]  Thus, even if the Court were to

_____

[11]  For these same reasons, Petitioner's other assertions -- that the Petition is timely because his English language abilities are limited, and he has not been treated well in prison -- ring hollow.  In Mendoza v. Carey, 449 F.3d 1065, 1069-70 (9th Cir. 2006), the Ninth Circuit observed that equitable tolling may be justified if language barriers actually prevent timely filing and held that "a

speculate that some degree of equitable tolling could be afforded *if*

non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." *See also* Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008)("the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language difficulty").

Petitioner has not even attempted to make this required showing. Significantly, Petitioner does not actually claim an inability to speak or read English. Rather, he vaguely asserts that he does not speak English well. That Petitioner was able to formulate a list of grievances (related to Cole's failure to pursue federal habeas relief) in April 2006, file an accusation in the California Supreme Court in 2009, initiate and prosecute a superior court action in 2010, pursue an appeal from the trial court's adverse judgment in 2010-2011, and file a habeas petition in the California Supreme Court -- all while proceeding *pro se* -- precludes any finding that Petitioner's asserted poor treatment in prison and/or his purported English language difficulties were extraordinary circumstances that rendered it impossible for him to seek federal habeas relief on a timely basis.

Petitioner's assertion that he relies on other inmates to draft his legal documents does not alter this conclusion. It is far from unusual for prisoners to seek and utilize the assistance of other prisoners, especially those with greater legal experience or knowledge, when pursuing post-conviction relief. *See* Wilson v. Bennett, 188 F. Supp. 2d 347, 353-54 (S.D.N.Y. 2002)(allegations that the petitioner lacked legal knowledge and had to rely on other prisoners for legal advice and in preparing his papers "cannot justify equitable tolling," as such circumstances are not "extraordinary"); Henderson v. Johnson, 1 F. Supp. 2d 650, 655 (N.D. Tex. 1998)("[i]t is common for prisoners to count on other inmates for assistance in . . . seeking habeas relief"). This commonality of prison life cannot be found to be "extraordinary." *See* Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010)(*per curiam*)(reliance on another inmate to prepare and file his habeas petitions did not relieve the petitioner of the obligation to comply with the law and did not warrant equitable tolling); Fonseca v. McNeil, 2009 WL 196095, *5 (D. Fla. 2009)("The fact that [petitioner] might need to rely on inmate law clerks and others because he is uneducated in the law, as he contends, is not uncommon. Prisoners often count on other prisoners for assistance in filing lawsuits or seeking habeas relief. Since a lack of knowledge of the law is not in any way rare, and is probably the rule rather than exception among prisoners, such reliance is not extraordinary or unusual, and therefore is not a justification for equitable tolling."); Thomas v. Unger, 2007 WL 539039, at *2 (E.D.N.Y. 2007)(that an inmate was "ignorant of the law and had to rely on other inmates for help was not "extraordinary," because this situation "appl[ies] to most inmates").

Petitioner could adduce competent, relevant evidence, Petitioner's limitations period, if tolled as late as January 29, 2010, could not be extended past January 29, 2011 -- over 15 months before the Petition was filed.[12]

In sum, there is no amount of equitable tolling that could be afforded to Petitioner that would render the Petition timely. As a result, discovery or an evidentiary hearing on this issue is not warranted. *Cf.* Roberts v. Marshall, 627 F.3d 768 (9th Cir. 2010), in which the petitioner's limitations period expired in 2003, he filed state habeas petitions in 2004 and 2006 raising his federal habeas claims, he filed his federal habeas petition in 2007, and he claimed to be entitled to equitable tolling based on mental illness and to an evidentiary hearing to develop the record in support of his equitable tolling contention. The Ninth Circuit concluded that there was no error in declining to develop the record or to afford equitable tolling based on the petitioner's assertions that his mental impairment constituted an extraordinary circumstance, because he had "managed to file several" state habeas petitions raising his federal claims during the same period for which he sought equitable tolling. *Id.* at 773.

Even after making a host of assumptions in Petitioner's favor, there is no basis upon which the Court can find the Petition to be timely. As plaintiff was advised in the OSC, district courts are permitted to consider, *sua sponte*, whether a petition is untimely and,

---

[12]    Of course, if a fuller development of the record established that Petitioner would not be entitled to a delayed commencement of his limitations period pursuant to Section 2244(d)(1)(D) and/or equitable tolling, the Petition would be untimely by 15 years.

after providing the petitioner with the opportunity to be heard, to dismiss a petition that is untimely on its face. <u>Day v. McDonough</u>, 547 U.S. 198, 209, 126 S. Ct. 1675, 1684 (2006); <u>Wentzell v. Neven</u>, 674 F.3d 1124, 1126 (9th Cir. 2012).  Through the detailed explanation in the OSC of why this case is untimely, Petitioner was provided with notice of the timeliness problem in this case and given an opportunity to be heard. Having considered Petitioner's Response to the OSC, all other filings in this case, and the matters of which judicial notice may be taken, it is clear that this action is substantially untimely.  Accordingly, dismissal is warranted.

For the foregoing reasons, IT IS ORDERED that:  the Petition is dismissed, with prejudice, on the ground that it is untimely; and Judgment shall be entered dismissing this action with prejudice.

In addition, pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court has considered whether a certificate of appealability is warranted in this case. <i>See</i> 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 1604 (2000).  The Court concludes that a certificate of appealability is unwarranted and, thus, a certificate of appealability is DENIED.

IT IS SO ORDERED.

DATED:   <u>April 16, 2013</u>.

_____
STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

PRESENTED BY:

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE